JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 21-1501 JGB (SHKx)** | Date | February 1, 2022 |
|---|---|---|---|
| Title | *Elizabeth Cabrera, et al. v. FCA US LLC* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiffs' Motion for Remand (Dkt. No. 15); and (2) VACATING the February 7, 2022 Hearing (IN CHAMBERS)

Before the Court is Motion for Remand filed by Plaintiffs Elizabeth Cabrera and Peter B. Vargas ("Plaintiffs"). ("Motion," Dkt. No. 15.) The Court finds the Motion appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion and VACATES the February 7, 2022 hearing.

### I. BACKGROUND

On November 25, 2020, Plaintiffs filed a Complaint in the Superior Court of the State of California for the County of Riverside against Defendants FCA US LLC ("FCA" or "Defendant") and JA Moss Inc. ("Complaint," Dkt. No. 1-1, Ex. A.) On June 30, 2021, Plaintiffs filed an amended complaint in state court. ("FAC," Dkt. No. 1-1, Ex. S.) The FAC alleges five causes of action: (1) failure to comply with obligation to repair or pay restitution for a defective vehicle in of the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act"), Cal. Civ. Code § 1790 et seq.; (2) failure to commence service or repairs in violation of the Song-Beverly Act; (3) failure to supply replacement parts during the express warranty period in violation of the Song-Beverly Act; (4) breach of express warranty in violation of the Song-Beverly Act; and (5) fraud by omission. (FAC.)

On August 3, 2021, Plaintiffs dismissed JA Moss, Inc. from the action. (Dkt. No. 1-1, Ex. D.) On September 2, 2021, Defendant removed the action to federal court. ("Removal," Dkt. No. 1.) Plaintiffs filed the Motion on December 22, 2021. ("Motion," Dkt. No. 15.) Plaintiffs also filed a request for judicial notice. ("RJN," Dkt. No. 16.) Defendant opposed on January 3, 2022. ("Opp.," Dkt. No. 17.) Plaintiffs replied on January 10, 2022. ("Reply," Dkt. No. 18.) Plaintiffs also filed an evidentiary objection. ("Evidentiary Objection to Fisher Declaration," Dkt. No. 18-2.)

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, a defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332. "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008).

When a state-court complaint alleges on its face "damages in excess of the required jurisdictional minimum," the amount pled controls unless it appears "to a legal certainty" that the claim is for less than the jurisdictional amount. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 402-404 (9th Cir. 1996). Conversely, "[w]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 793 (9th Cir. 2018). This sum is determined as of the date of removal. Id. at 790. "[T]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [the] defendant's liability." Lewis v. Verizon Comm'ns. Inc., 627 F.3d 395, 400 (9th Cir. 2010). Accordingly, "in assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" Campbell v. Vitran Express, Inc., 471 F. App'x. 646, 648 (9th Cir. 2012) (quoting Kenneth Rothschild Trust v. Morgan Stanley, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

The removing party need only include a "short and plain statement" setting forth "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 88 (2014). Where the plaintiff contests the removing defendant's allegations, however, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in controversy requirement has been satisfied." Id. at 82.

### III.   DISCUSSION

A.   **Request for Judicial Notice and Evidentiary Objections**

Plaintiffs request judicial notice of remand orders by various California district courts in Lemon law cases.  (See RJN.)  The Court "may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).  Accordingly, the Court GRANTS the RJN.

Plaintiffs also raise various objections to the Fisher Declaration.  (See Plaintiffs' Ev. Objs.)  The objections (lacks foundation, lacks personal knowledge, improper legal conclusion, relevance, unduly prejudicial) target paragraph 7, which states that "[o]ur office obtained a copy of Repair Order…opened on October 26, 2020…[and]identifies Plaintiff Vargas…[a]attached hereto as Exhibit A is a true and correct copy of [the repair order] for the subject vehicle."  (Plaintiffs' Ev. Objs. at 1) (citing Christopher M. Fisher Decl. ¶ 7).[1]

Plaintiffs do not expand on their objections other than Mr. Fisher's knowledge is not based on personal knowledge, lacks foundation, and must contain facts showing the declarant's connection to the matters stated.  (Id.)  Mr. Fisher and his firm are FCA's attorneys of record.  The declaration does not attest that it was the first repair Plaintiffs sought.  It merely describes details of the repair order.  There is no "legal conclusion" in paragraph 7, which is clearly relevant to the offset mileage determination, and is not prejudicial.  To the extent Plaintiffs' object to the repair order itself, the Reply and evidentiary objections are contradictory.  In the Reply, Plaintiffs argue that FCA's offset calculation is arbitrary and that it should have provided "a history of the Vehicle's warranty repair visits, of which FCA clearly has in its possession (as the repairs occurred under FCA's own warranty)."  (Reply at 8.)  The Court OVERRULES Plaintiffs' evidentiary objections.

B.   **Motion to Remand**

Plaintiffs move to remand on the basis that that FCA has failed to meet its burden to prove the amount in controversy requirement is satisfied.  (Motion.)

---

[1] The Fisher Declaration does not have a paragraph 17.  The Court corrects Plaintiffs' error in its reference to the objected to material.

### 1. Complete Diversity

FCA argues that the Court has diversity jurisdiction of this action because the amount in controversy exceeds $75,000, Plaintiffs are citizens of California, and FCA is not a citizen of California. ("Removal.") Diversity of citizenship is uncontested.

### 2. Amount in Controversy

The Court finds that the amount in controversy is not facially evident. FCA argues the amount in controversy exceeds $75,000 because Plaintiffs allege that they suffered damages "in an amount not less than $25,001.00," and "prayed for "actual damages, restitution, a civil penalty in the amount of two times Plaintiffs' actual damages, consequential and incidental damages, costs of suit and attorney fees, pre-judgment interest, and punitive damages." (Opp. at 1.) However, the only monetary value pled is "damages in a sum to be to be proven at trial in an amount that is not less than $25,001.00" in the body of the FAC. (FAC ¶ 12.) Because the $25,001 amount "is not repeated in the Prayer for Relief," the FAC "fails to allege a sufficiently specific total amount in controversy." Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007). Further, "it is unclear whether all [the] damages are subsumed within the request for $25,001." Schneider v. Ford Motor Co., 441 F. Supp. 3d 909, 913 (N.D. Cal. 2020) (emphasis in original). Accordingly, the Court "must determine if [FCA] ha[s] shown by a preponderance of the evidence that the amount in controversy exceeds $75,000." Id.

#### a. Actual Damages

In support of its position, FCA points out that Plaintiffs seek remedies provided for in Cal. Civ. Code section 1794(b)(1), which includes "the entire contract price of the vehicle," and well as civil penalties. (Opp. at 1) (citing FAC ¶ 9). The vehicle's total price was approximately $42,087.75. (FAC ¶ 9.) The actual sale price was $35,087.75 after a $7,000 manufacturer's rebate.[2] (Retail Installment Sales Contract, "RISC," Dkt. No. 1-1, Ex. E.) By FCA's calculation, Plaintiffs' claim for actual damages is $35,087.75 and two-times civil penalties is 70,175.50, which brings the total amount in controversy to $105,263.25 before attorneys' fees or interest. (Opp. at 8.)

Plaintiffs make several arguments to challenge the amount of controversy in this action: (1) FCA miscalculates Plaintiffs' actual damages as the relevant value is actual payments made, not the vehicle purchase price alone (Motion at 7-8); (2) FCA fails to show that the civil penalties push the amount in controversy over $75,000 (Id. at 10); (3) FCA's assumption that Plaintiffs are eligible for two-times the amount of civil penalties is unjustified (Id.); (4) FCA cannot apply punitive damages to the amount in controversy calculation (Id. at 7); (5) FCA's mileage offset

---

[2] In the Notice of Removal, Defendant stated in error that the total sale price was $26,324.70. (Removal ¶ 22.) Defendant explains that this amount accounts for the financed portion of the sale in the RISC, not the vehicle's total sale price. (Opp. at 1.)

calculation is speculative (Id. at 8); and (6) FCA fails to proffer any specific evidence of attorneys' fees (Id. at 9.).

FCA asserts that the contract's purchase price unambiguously determines Plaintiffs' actual damages. (Opp. at 7-8.) The Court disagrees. The vehicle purchase price can demonstrate actual damages under the Song-Beverly Act, particularly when a plaintiff seeks recovery of "the entire contract price." Schneider, 441 F. Supp. 3d at 914–15; see also Luna v. FCA US LLC, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021) ("Courts routinely find that an undisputed Retail Installment Sales Contract can establish actual damages."). Plaintiffs contest actual damages on the basis that FCA does not establish the amount of their actual payments. (Reply at 9 n.4.) However, because the Song-Beverly Act provides that "the actual price paid or payable by the buyer includes any finance charges," courts, including this one, have found the total cash price a more appropriate measure of actual damages. See Alvarado v. FCA US, LLC, 2017 WL 2495495, at *4 (C.D. Cal. June 8, 2017) (applying "the total cash price paid for the subject vehicle"); Luna, 2021 WL 4893567, at *7 (concluding that "it is more appropriate to use the total cash price listed in the [contract]" when "the Court cannot determine whether Plaintiff has paid all the finance charges that are included in the total sale price of the Vehicle"). Accordingly, the Court uses the total cash price in the RISC of $33,018.95 as the initial amount for the calculation of actual damages. (RISC at 2.)

The Court agrees with Plaintiffs that the total cash price must be reduced by a statutory mileage offset. (Motion at 8-9.) Under the Song-Beverly Act, any restitution "must be reduced by the amount directly attributable to use (as measured by miles driven) by the consumer prior to the first repair (or attempted repair) of the problem as pro-rated against a base of 120,000 miles." Alvarado, 2017 WL 2495495, at *4; Cal. Civ. Code § 1793.2(d)(2)(C). The RISC lists the odometer reading as thirty-six miles at the time of purchase. (RISC at 1.) FCA disputes whether the statutory milage offset must be factored into the amount in controversy calculation. (Opp. at 9.) Even so, it uses Cal. Civ. Code section 1793.2(d)(2)C) to calculate the offset amount.

Cal. Civ. Code section 1793.2(d)(2)(C) provides a formula to calculate the mileage offset:

$$\frac{N}{120{,}000} \times cash\ price$$

(N = number of miles driven before first repair related to the alleged noncomformity)

Cal. Civ. Code § 1793.2(d)(2)(C).

Plaintiffs do not proffer evidence to establish the appropriate mileage offset. FCA includes a repair order, dated October 26, 2020, which states that "transmission is jerking back and forth when taking off from a stop…" (Repair Order at 1.) FCA maintains that this repair order represents the first repair for a nonconformity, which occurred at 40,686 miles. (Id.) FCA offers the following calculation to generate an offset of $9,654.37. (Opp. at 10.)

$$\frac{40{,}686}{120{,}000} \times 28{,}500$$

FCA's selection of formula variables is inaccurate in part. First, it appears that FCA uses the RISC cash price that does not include fees noted in "Total Cash Price" subsections (a) through (n). (See RISC.) As noted above, the Court determined the total cash price, as listed, is $33,018.95. (Id.)

Second, Plaintiffs assert that FCA arbitrarily selected the October 26, 2020 service among the several service repairs Plaintiffs sought. (Reply at 8.) Cal. Civ. Code section 1793.2.(d)(2)(C) provides that FCA must identify the first repair **attempt** "for correction of the **problem that gave rise to the nonconformity**." Cal. Civ. Code §1793.2(d)(2)(C). Plaintiffs argue that FCA failed to meet its burden to show why the arbitrarily chosen repair visit was a reasonably accurate measure for a mileage offset calculation, given that FCA retains all service order records, thus it is a speculative amount. (Id.) In the FAC, Plaintiffs allege that the October 28, 2020 repair was for "ongoing transmission complaints…transmission jerking back and force when accelerating from a stop and leaking transmission fluid." (FAC ¶ 24.) However, Plaintiffs "continued to experience symptoms of the Vehicle's defects, including the Electrical Defect, despite [FCA's] attempts to repair" after October 26, 2020. (Id. ¶¶ 24-25.) Instead, Plaintiffs provide a November 19, 2020 repair order which "could also" serve as the basis for the mileage offset calculation. (Reply at 9.) The November 19, 2020 repair, which occurred six days before the Complaint was filed, notes that "customer states that the vehicle is running like it has a missfire [sic]…vehicle has misfire, plugs wer[e] recently done, misfires are not counting, removed coils and found arch mark on cylinder 2 coil…" (November 19, 2020 Repair, Dkt. No. 18-1, Ex. 1. at 1.) Plaintiffs fail to articulate why the November 19, 2020 repair date should be used to calculate the offset amount.

Based on the FAC and the two repair order forms, the Court determines that the two repairs were for a related underlying issue, even if the repair was unsuccessful, because the statute's operative word is **attempt**. The November 19, 2020 repair form notes that "plugs were recently done," which referred to the October 26, 2020 repair. (FAC ¶ 24) (alleges the October 2020 repair included a spark plug replacement). FCA's reliance on the October 26, 2020 repair date is the correct identification of the first repair attempt for correction of the problem that gave rise to the nonconformity.

Thus, the Court uses the October 26, 2020 repair form vehicle mileage for the formula, along with the total cash price of the vehicle.

$$\frac{40{,}686}{120{,}000} \times 33{,}018.95$$

The above calculation generates an offset of $11,245.16. The actual damages amount ($33,018.95 minus $11,245.16) equals $21,773.79.

### b. Civil Penalties[3]

The Song-Beverly Act provides that a civil penalty of two times the amount of actual damages is available pursuant to Sections 1794(c) and 1794(e) of the California Civil Code. Generally, "[c]ourts as a matter of law, calculate the amount in controversy based upon the maximum amount of civil penalties available to plaintiff." Saulic v. Symantec Corp., 2007 WL 5074883, at *4 (C.D. Cal. Dec. 26, 2007). However, when a defendant "fail[s] to establish the amount of damages at issue," then "the Court cannot determine the amount of any potential civil penalty." Edwards v. Ford Motor Co., 2016 WL 6583585, at *4 (C.D. Cal. Nov. 4, 2016). Two-times the actual damages amount is $43,547.58, plus the actual damages amount of $21,773.79, equals a total of $65,321.37. This does not meet the jurisdictional threshold of $75,000.

### c. Attorney Fees

Finally, FCA argues that Plaintiffs' request for attorneys' fees should be included in the amount in controversy calculation, but that it "not even need to rely on estimated attorney's fees to reach the $75,000 threshold." (Opp. at 13.) FCA's assumption is fatal to its Opposition.

"Section 1332(a)'s amount-in-controversy requirement … includes attorneys' fees." Guglielmino, 506 F.3d at 700; Galt G/S. v. JSS Scandinavia, 142 F.3d 1150, 1155–56 (9th Cir. 1998). "The removing defendant, however, must use 'summary-judgment-type evidence' to show that it is 'more likely than not' that the amount in controversy (including attorneys' fees) exceeds $75,000." Schneider, 441 F. Supp. 3d at 914.

In Schneider, the court found insufficient the defendant's submission of a single declaration that "claims for attorneys' fees in these cases regularly approaches or exceeds

---

[3] FCA mentions Plaintiffs' requested relief of punitive damages but does not specifically argue whether or how it should be calculated for the amount in controversy determination. Because "the Song-Beverly Act does not expressly provide for punitive damages," they are not part of the amount in controversy. Brady v. Mercedes-Benz USA, Inc., 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002); see also Edwards v. Ford Motor Co., 2016 WL 6583585, at *5 (C.D. Cal. Nov. 4, 2016) (finding that the plaintiff will not be able to "recover punitive damages" under the Song-Beverly Act).

$50,000." Id. Evidence of a recent fee award granted to the plaintiff's counsel was also inadequate. The defendants' claim "that the same counsel appears in each case and that the subject-matter of the cases are the same" failed "to provide the Court with specific evidence showing that the attorneys' fees in this case are 'more likely than not' to exceed $75,000." Id. (emphasis in original).

In the Notice of Removal, FCA simply argued that with the "amount of reasonable attorney fees which is a party is entitled…it is clear that the amount in controversy exceeds $75,000." (Removal ¶ 23.) FCA's sole evidence is the declaration of Scott S. Shepardson, who attests that Plaintiffs' counsel filed a Motion for Attorney's Fees and Costs that exceeded $400,000 and was awarded $200,000, following a trial against FCA in Sacramento County. (Shepardson Decl. ¶ 5., Dkt. No. 1-1.) Schneider deemed this kind of declaration insufficient. Fees which flow from a trial are not analogous to the instant case, and therefore are not persuasive to this Court. FCA provides no specific evidence of the attorneys' fees in this case. Accordingly, the Court concludes that attorneys' fees cannot be used to satisfy the amount in controversy requirement.

In sum, FCA fails to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. This Court lacks subject matter jurisdiction over the Complaint. The Court GRANTS the Motion.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** the Motion and **REMANDS** to the Superior Court of the State of California for the County of Riverside. The February 7, 2022 hearing is VACATED.

The Clerk is directed to close the case.

**IT IS SO ORDERED.**